We'll hear the next case, which is Cruz v. Galaza. Good morning, Your Honors. May it please the Court, I'm Philip Trevino on behalf of the Petitioner Appellant. There is really no dispute with regard to the facts here. It's a fairly straightforward fact pattern, although I'd be happy to answer any questions from the Court on as far as the facts go or offer any clarification that might benefit Your Honors. Otherwise, I'll just turn directly to the fact that the Respondent is attempting to invoke some sort of a barrier to this Court's de novo review to this habeas matter. There's a citation in the answering brief to Lambert, and I can appreciate the argument that Respondent makes, but I have to most respectfully say it simply has no allegation. What is – what is – this is a habeas case? It's a 2255 – a four, excuse me, Your Honor. Right. This is from State court? From State court. And you are saying that there is an issue that requires de novo review? There is, Your Honor. The factual record that's before this Court was never before the State courts, and that's the reason that I have to respectfully reject the Respondent's arguments that this Court somehow under edge is precluded from addressing the full fact pattern that the District Court did see. And the specific fact that our factual nexus that's new to the Federal courts that was not anywhere before the State court system is contained in the declaration offered by trial counsel, which purports to explain or justify his failure to interview the crucial prosecution witness. Well, assuming that that was ineffective assistance, what – what about the prejudice prong of Strickland? Your Honor, I appreciate the question. I think the prejudice is overwhelming. There was a single witness at Petitioner's trial who identified him as the perpetrator. There was the victim, who of course was a witness also, who didn't make an identification. But there were numerous other individuals present at the scene of the shooting who were available but for the asking if trial counsel had simply ascertained their identities and gone and interviewed them as the declarations that were before the State court and before the District court and are now before this court clearly established. They knew Petitioner. They knew him not to be in the car from which the shots were fired. They were available had they simply been asked to have testified at Petitioner's trial to these effects. And simply nobody bothered to learn who they were to go and ask them. So the prejudice in a single witness, eyewitness case, Your Honor, where the defendant also musters an alibi defense, two additional – But there's more evidence in that, is there not, Mr. Trivino? I mean, you've got the arrest – the arrest conduct where he fled from the police. He does flee out of – Drives a car that matches the description. Well, most respectfully, Your Honor, he's not in the car. Well, there's an eyewitness who says that that was the guy. The same eyewitness says that when the car returns 40 minutes later, the Petitioner was not in the car. But he identified him as the guy who was in the car earlier who fired the gun and says, I know this guy. I know him from the neighborhood. So this is not a – this is not a stranger on stranger identification. I have to say respectfully, the statement that he knows the Petitioner from the neighborhood  I thought I read in the record that he knew him. Your Honor, that's – those statements are made by the other witnesses whose identities were never learned who had even called, would have so testified that he knew him. But I have to respectfully say to the Court, I don't recall the statement Your Honor just made. Maybe counsel for the State can help me if I'm wrong on that. My client's demeanor at the time of his arrest, certainly not that of a good citizen. Unfortunately, that's really not the question here. The question is whether or not he was denied his constitutionally guaranteed right to effective assistance. He had a trial as to this specific crime. That he was doing something else, that he made a statement to a particular individual that he was running from the police, it's open to obvious interpretation. None of it favorable to my client. But I'm not here to defend my client's overall life history. I'm here urging this Court to look at and grant relief as to the particular trial he did have. So I don't know, Judge Goodwin, if I've answered your question about prejudice. But I would respectfully urge that those witnesses coming in corroborating a non-identifying victim and challenging head-on, each independent of the other, I remind the Court, the single eyewitness's testimony, I suggest most respectfully, that's a very powerful defense case. Unless the Court has further questions, I'll reserve my remaining time. Thank you, Your Honor. May it please the Court. Deputy Attorney General Susan Sullivan Cusie, on behalf of the Warden and from the California Attorney General's Office. The District Court properly determined in this case that Petitioner's Trial Counsel's decision not to interview Hutchinson was a sound, tactical decision. I would disagree with Counsel's representation that this is subject to de novo review in this case. Here we go under 2254 D.1. And the unreasonable application clause of D.1 is the threshold here. And when we pass that threshold, and here in this case an evidentiary hearing was ordered, the magistrate also asked the State to provide declarations on behalf of three attorneys below, one of which was trial counsel. Those declarations were submitted. And those declarations corroborate here the State Court's ultimate decision. And that's what we're looking at here. And we are entitled to deference under AEDPA. We are looking at the ultimate decision. We're looking at the unreasonable application clause. Suppose the declarations weren't there. Right. Then if the declarations weren't there, we don't have as much to go on. However, a petitioner cannot get around prejudice in this case. The trial court, when it originally adjudicated the petition, went straight to prejudice and said, even if we had these declarations, the outcome would not have been different. When we got to the court of appeal level, the court of appeal said, one, you didn't provide declarations, which would be helpful in this case. But also, the alleged newly discovered evidence in this case doesn't unequivocally show that the defendant was innocent in light of the eyewitness identifications in this case. There's one idea that's very important in this case that Petitioner is elated to mention, and that is the woman whose house the defendant burglarized next door identified him at trial, unequivocally identified him as the person who came into her house. He was fleeing from police after Mr. Robinson called the police. Mr. Robinson also did identify the defendant at the scene, as well as at trial, and also at the scene. Originally, when the police arrived, they took two other friends of the petitioner's out of the house, brought them over to Mr. Robinson, and Mr. Robinson unequivocally said, no, these are not the guys. These are not the guys that were in the car that were shooting. So he had an opportunity to view two other people, and as soon as he saw Petitioner later when he was arrested, then that's when he identified the petitioner. So there was very strong eyewitness identification in this case. Can you help me with what Mr. Trevino says was my misreading of the record? I can't help you with that. I thought I could, and I thought I did recollect that he identified him, but I just reviewed quickly, and I don't know if that's the case. I don't know if he knew him from the neighborhood. We can check with that. The other two witnesses did claim that they knew him from the neighborhood in their declarations, and that's another interesting point to mention is that these two other witnesses that came forward in 1998, which was two years after the trial of Petitioner in this case, and presented their information. Appellate counsel in this case attempted to talk to Mr. Hughes, one of the two individuals, a year after trial in this case, and Mr. Hughes said, I'm not going to talk to you. I didn't see a shooting, and anyone else that you try to talk to is not going to give you any information on this case. And then it's interesting to note that a year later, Mr. Hughes, who had previously said he wouldn't talk to appellate counsel, files this declaration, and that the facts that are included in the declaration are strikingly similar to some of the facts that were included at the trial level. Turning to the reasonableness of counsel's decision not to interview Hutchinson in this case, it is our position, as it was the district court's position, that trial counsel's performance here was not deficient. Based on Hutchinson's failure to identify anyone at the preliminary hearing, and based on the facts that were elicited at the preliminary hearing, that Hutchinson had ample opportunity to view the people in the car. There was evidence that words were exchanged, actions were exchanged, suggesting that this was a gang case, that Hutchinson was walking ahead of his two friends, so he would have been more able to see the person in the car as the car stopped for a few seconds. It was reasonable for trial counsel to believe that Hutchinson would not have cooperated. And had he cooperated, if he'd been interviewed in this case, it is very likely that he would have identified the petitioner. And there's nothing under Strickland that says that you have to interview every witness. That is not the standard. And here, it could have been very bad for trial counsel had he gotten information that petitioner was, in fact, the shooter, because that information could have very well ended up in the hands of the district attorney. Often, investigating officers say, hey, if the defense ever approaches you, if a defense investigator ever approaches you, please call us and let us know. So there's no saying that this information would not have landed in the hands of the district attorney, who would have then had three or four other eyewitnesses to the shooting. It was also reasonable, as the district court mentioned, that trial counsel believe – it was reasonable for trial counsel to believe that Hutchinson would not have cooperated due to the fear of appraisal. Though gang evidence was not presented in this case, this was a gang case. The probation report shows that the petitioner had been involved in gang activity in the past. Even the two declarations that were submitted by people he allegedly knew stated that the – Well, we don't have to assume that it's a gang case. But could you help me with the chronology of this? Sure. The trial was when? 1996. And the two witnesses came forward and flipped in 1998. Yes. And they were contacted by appellate counsel. Well, one of them was contacted by appellate counsel in 1997, or thereabouts. The decision of the Court of Appeal? Mmm, 98 or 99. I don't recall the exact date. I would have to – Was this evidence available then? At the time of the – Correct. Let me see what date the Court of Appeal's decision came down. Right here. But this information, from what I understand, came up on state habeas. It came down after the Court of Appeal's decision was issued in this case. And the Court of Appeal on the habeas decision was that there's nothing to show that this was anything other than a tactical – Exactly. And then the declarations in the district court showed that it essentially was a – it appeared to show that it was a tactical decision. It was a tactical decision. And also, just as far as what happened below in the district court, I was not counsel on the case. However, it was my understanding an evidentiary hearing was ordered by Judge McMahon.  And on the day set for the evidentiary hearing, the party showed up and petitioners stated at that point, well, we let our witnesses go without the permission of the court. They were under subpoena. And they basically stated that they had no evidence to present at the hearing. At that point, Judge McMahon refused to grant a continuance. This case had been going on for three or four years. They just simply let their witnesses go. So at that point, Judge McMahon took it under submission and found, based on the declarations that had previously been filed in this case, that there was a reasonable tactical decision for not interviewing Hutchinson and didn't even get to the issue of prejudice. He said that it was unnecessary to even get to prejudice. But in this case, if this Court feels it's necessary to get to prejudice, I would submit that the evidence is overwhelming that there was no prejudice here. We do have him fleeing. We have him hiding from the police, showing a very strong consciousness of guilt. We have two strong eyewitness identifications. We have the white car that was used in the shooting, as well as used by a petitioner later when he went to his friend's house. We have a hole in his timeline as far as his alibi goes. And another point to note is that even if these declarations were submitted earlier, they just support the alibi defense that was already presented at the trial level. That was his defense. So this would have merely supported the alibi defense that Cruz was not the shooter. So unless there are further questions, I would submit on the briefing. Thank you. If I may, Your Honor, there are a number of points I'd like to address. And first, just sort of to come back to your question about the timeline, there's a critical aspect about the factual development that I hope this Court will appreciate. The petitions that were submitted in support of the state habeas did not contain the trial counsel's declaration. And that is as a matter of state law. People v. Gonzalez cited in the appellant's opening brief, which is a California Supreme Court decision that specifically holds that on habeas, a petitioner is not entitled to discovery absent an order from the Court to show cause. So I hope this Court can appreciate that from petitioner's perspective, an in-custody convicted defendant without the resources who had been represented by the County Public Defender's Office making an allegation of ineffective assistance was certainly in no position, either under the law or given this factual situation, to obtain the kind of declaration that later surfaced when the federal court authorized a declaration from trial counsel. The other thing, though, that counsel for respondent is urging this Court to give some significance to is the declaration that is in our record from appellate counsel with regard to his purported attempt to contact this witness. And I say it is in the record, but it isn't relevant to this issue. And to the best of my recollection, it was in no way considered by the District Court in support of its decision to deny relief. Moreover, even if it had been considered by the District Court, I would submit to this Court that that would have been an abuse of discretion given the fact that the declaration on its face is unreliable for this proposition. The appellate counsel recites that he telephoned an individual who purported to be this person, the witness. There's no basis given whatsoever for that counsel's conclusion that, in fact, he actually spoke to the individual who later executed a declaration under oath for this Court. So that whatever appellate counsel may or may not have believed was available to him, which wasn't put in front of the Court of Appeal, I don't think it deserves any... Really? Is that... I guess I'm not quite understanding what you're trying to say. Please. We're supposed to assume that a lawyer lies? No.  I don't trust that that individual was who the individual said he was. I trust that the lawyer has said the truth to the Court. What I don't trust is that whoever picked up the telephone, in fact, was the individual. So you're really arguing the weight of the evidence, that it's entitled to no weight at all because it's double hearsay. It's double hearsay. The District Court didn't even rely on it. So I think it's a complete red herring to the issue before this Court now. Let's go back to the declaration itself, though. Why isn't it a reasonable tactical decision for the trial defense counsel to say, look, I know from the preliminary hearing that Hutchinson did not identify my client as the shooter. I know that he is hostile, and I'm afraid that if I lean on him, he's going to go the other way on me and come back and say, yeah, I know who shot at me, and it was your client. My first question, Judge Tallman, if you're asking that question to me as a colleague, you come to me and say, this is my record. Yeah. I say, what makes you think that the witness is hostile to you? Well, it isn't a question of me. He doesn't say anything. The witness said nothing. No, hostile to the petitioner, not necessarily to the lawyer. He may have been hostile to the courtroom proceeding. This is, as counsel responded, is urging the Court to keep in mind, this is gang territory. These were gang allegations, supposedly. It may well be that that witness was simply hostile to the fact that he had been compelled by court order to appear and offer testimony for anybody. Okay, but I'm not sure you've answered my question. Why isn't it reasonable, given this type of a case, and what happened at the preliminary hearing, for a defense counsel to say, I'm just going to let sleeping dogs lie with this guy Hutchinson because he's a dangerous witness. He's the victim. He's the primary witness against me. And I've got him under oath saying, I can't identify the person who took a shot at me. First thing that makes it unreasonable, that witness's testimony at the preliminary hearing that says there are two other people who are eyewitnesses. Those three men, the witness plus the two additional unidentified individuals who have simultaneous sustained interaction with the two people in the car. Why are not all three of those men equally able, during that initial interaction, to make an observation? Apparently there's yelling going on. So they're all dealing with each other, these five people. That's the first reason to say, gee, I just don't care what this person says. No, no, no, it's not I don't care. It's I don't want to wake the sleeping dog for fear that he's going to bite me. How is that sleeping dog? I know that she's telling us now that counsel for respondent is saying, oh, this information is necessarily going to get into the prosecution's file. I don't know my... Well... Yeah, okay. I see your point there. Maybe, maybe not. Well, I have to strongly say that as counsel for endless defendants in trial court, I would have put those results in my file and closed that file. Sure. Never made it as clear to anybody. I have numerous other points, but I see... There's a certain amount of 20-20 hindsight going on on both sides. Thank you. Thank you so much. Bye. The case just argued is submitted for decision.
judges: Goodwin, Schroeder, Tallman